# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSEPH BRUTON,**                                    **CIVIL ACTION**
    **Plaintiff**

**VERSUS**                                            **NO.  17-3110**

**BP EXPLORATION & PRODUCTION**                       **SECTION: "E" (5)**
**INC., ET AL.,**
    **Defendants**


## ORDER AND REASONS

Before the Court is a motion *in limine* to exclude the opinions of Joseph Bruton's ("Plaintiff") general causation expert, Dr. Jerald Cook ("Cook"), filed by BP Exploration & Production, BP America Production Company, and BP p.l.c. (collectively "Defendants").[1] Also before the Court is the Defendants' motion for summary judgment.[2] Plaintiff has filed oppositions to both motions,[3] and Defendants have filed replies.[4] The Court previously deferred ruling on the pending motion *in limine* and motion for summary judgment to afford Plaintiff an opportunity to develop his spoliation argument.[5] Plaintiff has since filed his spoliation motion,[6] which Defendants oppose.[7] Because the Court is now prepared to rule on the spoliation motion, the Court also will rule on the motion *in limine* and motion for summary judgment herein.

---

[1] R. Doc. 58. Halliburton Energy Services, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc., additional Defendants, join in the motion *in limine*.

[2] R. Doc. 59. Halliburton Energy Services, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc., additional Defendants, join in the motion for summary judgment.

[3] R. Docs. 62, 63, 89, 90, and 103.

[4] R. Docs. 73, 75, 99, 100, and 106.

[5] R. Docs. 79 and 80.

[6] R. Doc. 91. **IT IS ORDERED** that Plaintiff's spoliation motion, and related briefing, be **UNSEALED**.

[7] R. Doc. 94. Halliburton Energy Services, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc., additional Defendants, join in the opposition.

## BACKGROUND

The instant action is a "B3" case arising out of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico. B3 cases involve "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)."[8]

Plaintiff alleges, in the aftermath of the *Deepwater Horizon* oil spill, he was a cleanup worker in Mobile, Alabama, where he cleaned and decontaminated vessels and equipment used in the spill response. As a result, Plaintiff was exposed to crude oil and chemical dispersants for approximately one month,[9] which allegedly caused him to develop various medical conditions, including "[c]oughing, lethargy, forgetfulness, abdominal pain, diarrhea, dizziness, eye irritation, sinus pain, headache, nasal congestion, nausea, shortness of breath, throat irritation, skin dryness and itching."[10] Plaintiff filed the instant civil action, seeking a jury trial with respect to his claims of negligence.[11]

Plaintiff relies on Cook to provide general causation testimony supporting Plaintiff's claim that his exposure to oil and dispersants caused his health problems.[12] It is uncontested that Cook is a qualified expert. What is contested, however, is whether Cook's testimony withstands a *Daubert* challenge. Defendants filed the instant motion *in limine*[13] to exclude Cook's general causation expert testimony and, they argue, if this testimony is excluded, the Court should grant their motion for summary judgment

---

[8] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*, on Apr. 20, 2010, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021) (Barbier, J.).
[9] R. Doc. 62-2 at p. 1, ¶ 2.
[10] R. Doc. 1-1 at p. 5.
[11] R. Doc. 1.
[12] R. Doc. 63.
[13] R. Doc. 58.

because Plaintiff will lack necessary expert testimony.[14] Alternatively, if Cook's testimony is not excluded, Defendants ask the Court to grant summary judgment because Plaintiff has not produced expert testimony to establish specific causation.[15] Plaintiff opposes Defendants' motions[16] and has filed a motion seeking admission of Dr. Cook's general causation testimony as a sanction for Defendants' failure to conduct biomonitoring and dermal monitoring, which Plaintiff alleges amounted to spoliation of evidence.[17]

## LEGAL STANDARDS

### I.   Motion *in Limine* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.[18] Indeed, the Supreme Court held Rule 702 requires a district court to act as a gatekeeper to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[19] Rule 702 governs the admissibility of expert testimony,[20] providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts.

*Daubert* "provides the analytical framework for determining whether expert

---

[14] R. Doc. 59.
[15] *Id.*
[16] R. Docs. 62, 63, 89, and 90.
[17] R. Doc. 91.
[18] *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).
[19] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993)
[20] *Id.*; *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).

testimony is admissible under Rule 702."[21] The burden of proof rests with the party seeking to present the challenged expert testimony—namely, a preponderance of the evidence standard.[22] Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment "to determine whether the expert testimony is both reliable and relevant."[23]

In terms of the reliability inquiry, a series of non-exhaustive factors are considered, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.[24] The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."[25] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702."[26]

In terms of the relevancy inquiry, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[27] The "helpfulness" prong is concerned with ensuring the

---

[21] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).

[22] *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016); *see also Daubert*, 509 U.S. at 592 n.10.

[23] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999).

[24] *Burleson*, 393 F.3d at 584.

[25] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)).

[26] *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

[27] *Bocanegra v. Vicmar Servs.*, Inc., 320 F.3d 581, 584 (5th Cir. 2003).

expert testimony is not only scientifically reliable but also "relevant to the task at hand."[28]

## II. Spoliation Standard

The spoliation of evidence doctrine concerns the intentional destruction of evidence.[29] If a party intentionally destroys evidence, the trial court may exercise its discretion to impose sanctions on the responsible party.[30] The sanctions may include an instruction to the jury to infer that "the evidence would have been unfavorable to the party responsible for its destruction."[31] This adverse inference rule "derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction."[32] Accordingly, to restore the prejudiced party, an adverse inference "plac[es] the risk of an erroneous judgment on the party that wrongfully created the risk."[33]

Before a court may consider imposing sanctions, however, "the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed."[34] Such a duty "arises when the party has notice that the evidence is relevant to litigation."[35] Once a court concludes that a party was obliged to preserve the evidence, it must then consider whether the evidence was intentionally destroyed and the likely

---

[28] *Daubert*, 509 U.S. at 597.

[29] *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, at *1 (E.D. La. June 12, 2000) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir.1994)).

[30] *Id.*

[31] *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998); *see, e.g.*, *Vodusek*, 71 F.3d at 155; *Schmid*, 13 F.3d at 78; *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Nation–Wide Check Corp. v. Forest Hills Distribs.*, 692 F.2d 214, 217–18 (1st Cir. 1982); *In re Hopson Marine Transp., Inc.*, 168 F.R.D. 560, 567 (E.D. La. 1996).

[32] *Kronisch*, 150 F.3d at 126.

[33] *Id.* (quoting *Nation–Wide Check*, 692 F.2d at 218).

[34] *Menges*, 2000 WL 765082, at *3.

[35] *Id.*

contents of that evidence.[36] The Fifth Circuit requires the party seeking sanctions to show that the party who allegedly spoiled the evidence acted in "bad faith."[37] Negligence is not enough to support the imposition of sanctions for spoliation, "for it does not sustain an inference of consciousness of a weak case."[38] Accordingly, a party seeking sanctions is not even entitled to an adverse inference—a form of relief less drastic than of that sought by Plaintiff in the case at bar—unless that party can show that its adversary intentionally and in bad faith disposed of the evidence.

## III.   Motion for Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[39] "An issue is material if its resolution could affect the outcome of the action."[40] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[41] All reasonable inferences are drawn in favor of the non-moving party.[42] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[43]

---

[36] *Id.*

[37] *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *see also Anderson v. Prod. Mgmt. Corp.*, No. 98–2234, 2000 WL 492095, at *3 (E.D. La. Apr. 25, 2000) (collecting authorities).

[38] *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).

[39] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[40] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[41] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[42] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[43] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material fact may be presented in a form that would not, in itself, be admissible at trial."[44]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[45]  To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[46] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[47]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[48] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary

---

[44] *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).
[45] *Celotex*, 477 U.S. at 323.
[46] *Id.* at 331.
[47] *Id.* at 322–24.
[48] *Id.* at 331–32 (Brennan, J., dissenting).

judgment must be denied.[49] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[50] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[51]

## LAW AND ANALYSIS

### I.   BP's motion *in limine* to exclude Cook's general causation expert testimony is granted.

"B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[52] Once a plaintiff's diagnoses have been confirmed, the plaintiff has the burden of establishing general causation and specific causation. "'First, the district court must determine whether there is general causation. Second, if it concludes . . . there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence.'"[53] "General causation is whether a substance is capable of causing a particular

---

[49] *See id.* at 332.

[50] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[51] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[52] Medical Settlement Section VIII(G)(3)a); *see also In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*, on Apr. 20, 2010, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021) (Barbier, J.); *accord Perkins v. BP Expl. & Prod.., Inc.*, No. 17-4467, 2022 WL 972276, at *2 (E.D. La. March 31, 2022).

[53] *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, 722 (5th Cir. 2009) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).

injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."[54] With respect to general causation, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."[55]

### A.   Cook fails to verify Bruton's diagnoses.

Defendants move the court to exclude Cook's expert report because he does not verify Plaintiff's medical diagnoses of coughing, lethargy, forgetfulness, abdominal pain, diarrhea, dizziness, eye irritation, sinus pain, headache, nasal congestion, nausea, shortness of breath, throat irritation, skin dryness and itching. The American Medical Association's (AMA) Guide to the Evaluation of Disease and Injury Causation provides the expert's threshold inquiry or "first step is to establish or verify the diagnosis . . . . This step is accomplished by careful review of the available medical records and/or examination of the patient. . . . Exposure becomes relevant only when the presence of disease or illness is established."[56] This threshold inquiry is designed to "avoid wasting time, effort, and resources pursuing unreasonable hypotheses, while at the same time not missing the opportunity to find previously unrecognized hazards."[57] The expert must verify the patient's diagnoses before proceeding to general or specific causation.[58]

Cook "maintains a copy of this AMA publication and uses it as a reference."[59]

---

[54] *Id.*
[55] *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996).
[56] MELHORN, M.D., ET AL., AMA GUIDE TO THE EVALUATION OF DISEASE AND INJURY CAUSATION (2d ed.), at p. 578.
[57] *Id.*
[58] *Id.*
[59] *Novelozo v. BP Expl. & Prod., Inc., et al.*, No. 13-1033, 2022 WL 1460103 *6 (E.D. La. May 9, 2022) (citing deposition transcript of Cook).

Troublingly, though, Cook's report includes no reference to Bruton or his diagnoses[60] and there is no indication that Cook either interviewed or examined Bruton before forming his expert opinion. Furthermore, there is no indication Cook reviewed Bruton's medical records. Plaintiff's opposition admits that Cook "does not base his opinion on a medical diagnosis specific to the plaintiff," but asserts that "[a] diagnosis is not necessary in a transient symptom case" such as this one.[61] In support of that contention, Plaintiff cites cases like *Guidry v. Dow Chemical Company*[62] and *Bell v. Foster Wheeler Energy Corporation*.[63]

*Guidry* involved a class action suit for damages relating to harm caused by an unexpected release of ethyl acrylate from a tank at a Union Carbide facility in Taft, Louisiana.[64] Before the court on a motion for summary judgment, the sole issue was whether general causation expert testimony alone was sufficient to prove causation between complained-of transient symptoms and exposure when the injury was within the layperson's common knowledge, or whether specific causation expert testimony also was required.[65] The court held specific causation expert testimony was not required to prove the claim because the injuries were within the common knowledge held by jurors.[66] Similarly, in *Bell*, Judge Africk determined that, for asbestos exposure claims resulting in mesothelioma, as opposed to transient symptoms, general causation expert testimony could sustain a claim even in the absence of expert testimony on specific causation when there was specific evidence regarding the nature of the plaintiff's exposure.[67] In that case,

---

[60] Bruton's name does not appear in Cook's general causation expert report. *See generally* R. Doc. 47-3.
[61] R. Doc. 63 at p. 16.
[62] No. 19-12233, 2021 WL 4460505 (E.D. La. Sept. 29, 2021).
[63] No. 15-6394, 2017 WL 889083 (E.D. La. March 6, 2017).
[64] 2021 WL 4460505 at *1.
[65] *Id.* at *2. This was not at issue in the motion for partial judgment on the pleadings. *Id.* at *3.
[66] *Id.* at *2.
[67] 2017 WL 889083 at *3.

the court found there may be sufficient evidence to permit the jury to conclude that the defendant's product was a substantial factor in causing the plaintiff's injury.[68]

In sum, *Guidry* and *Bell* analyzed whether, inter alia, general causation expert testimony alone could sustain a toxic tort claim without additional expert testimony on specific causation either when the injury was within the layperson's common knowledge or when there was specific evidence regarding the nature of the plaintiff's exposure. Critically, the courts in *Guidry* and *Bell* did not analyze whether, as a threshold matter, a general causation expert is required to confirm a plaintiff's diagnoses.[69] The issue now before this Court relates to Cook's failure to perform the threshold task of confirming Plaintiff's diagnoses—not whether there is a need for expert testimony to prove specific causation.

*Novelozo v. BP Exploration & Production, Inc., et al.*, a similar B3 cleanup worker exposure case in which Cook provided a general causation expert report, is most analogous to the case at bar. In *Novelozo*, one ground upon which Judge Africk relied to exclude Cook's expert testimony was Cook's failure to verify the plaintiff's diagnoses.[70] In that case, there was evidence Cook examined the plaintiff and reviewed the plaintiff's medical records—but by Cook's own admission he was "unable to perform step 1 [of the AMA Guide] to [his] satisfaction."[71] In this case, Cook does not base his opinion on an examination of Bruton, Bruton's medical records, or Bruton's diagnoses. Cook did not even attempt to perform step 1 of the AMA Guide. There is an even greater justification

---

[68] *Id.*

[69] *See generally Guidry*, 2021 WL 4460505; *Bell*, 2017 WL 889083.

[70] Novelozo alleged he suffered from dizziness, light headiness, stomach problems, stress, skin rashes, respiratory problems, breathing problems, sleep problems, abdominal pain, bowel problems, nausea, vision problems, memory problems, bloody nose, and loss of libido as a result of his exposure. No. 13-1033, 2022 WL 1460103 *1 n.9 (E.D. La. May 9, 2022).

[71] *Id.* at *5.

for excluding Cook's expert opinion as unreliable in this case than in *Novelozo*.

Expert testimony "must be reliable at each and every step or else it is inadmissible."[72] The Court's review of the relevant section of the AMA Guide—which Defendants included in the record—demonstrates the AMA's framework is a published technique with explicit standards controlling its operation.[73] Cook's failure to perform step one of the AMA Guide's framework is concerning because "[e]xposure becomes relevant only when the presence of disease or illness is established."[74] Cook's failure to confirm as a threshold matter that Bruton had been diagnosed with coughing, lethargy, forgetfulness, abdominal pain, diarrhea, dizziness, eye irritation, sinus pain, headache, nasal congestion, nausea, shortness of breath, throat irritation, skin dryness, and itching reveals that Cook has not "reliably applied the principles and methods to the facts of this case."[75]

This deficiency is particularly concerning because "the fundamental question underlying [Cook's] testimony," as well as the Court's ruling on Defendants' motion *in limine*, is "whether the chemicals that [Bruton was] exposed to and the type of exposures [Bruton] experienced caused [Bruton's illnesses]."[76] Without verifying Bruton's diagnoses, Cook has not sufficiently explained how any particular study could provide "a reliable basis for the opinion that the types of chemicals [Bruton was] exposed to could cause [his] particular injury in the general population."[77] This lack of verification of

---

[72] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).
[73] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004) (discussing the nonexclusive factors for the reliability inquiry).
[74] MELHORN, M.D., ET AL., AMA GUIDE TO THE EVALUATION OF DISEASE AND INJURY CAUSATION (2d ed.), at p. 578.
[75] FED. R. EVID. 702(d).
[76] *Knight*, 482 F.3d at 352.
[77] *Id.* at 353.

Plaintiff's diagnoses weighs against admitting Cook's opinions.[78]

**B.  Cook does not identify the harmful level of exposure to a chemical required for complained-of symptoms to manifest, a minimum standard for general causation set by the Fifth Circuit.**

Defendants also move the Court to exclude Cook's testimony on general causation because of his "lack of any opinion as to the level of exposure known to cause the plaintiff's conditions" in the general population, which the Fifth Circuit has described as one of the minimum requirements for an admissible general causation opinion in toxic tort cases.[79]

In recent cases before different sections of this court, nearly identical expert testimony from Cook on general causation has been excluded for various reasons relating to reliability, not the least of which is because "a causation expert must identify 'the harmful level of a[n] exposure to a chemical.'"[80] In fact, in *Murray v. BP Exploration & Production, Inc., et al.*, Judge Ashe examined the exact same Cook report[81] as the one

---

[78] In *Murray v. BP Exploration & Production, Inc., et al.*, Judge Ashe did not decide whether Cook had to verify the plaintiff's diagnoses before assessing general and specific causation because "[t]he necessity of this step may be questioned in light of Judge Barbier's determination" in similar B3 cases "that expert medical testimony on specific causation is not required for transient or temporary symptoms that are within the general understanding of laypersons." No. 17-3582, 2022 WL 1811138 *4 n.52 (E.D. La. June 2, 2022). This Court concludes it is necessary for an expert to verify a plaintiff's symptoms before expressing an opinion as to both general and specific causation because the verification is a threshold inquiry an expert must complete before conducting even a general causation analysis. MELHORN, M.D., ET AL., AMA GUIDE TO THE EVALUATION OF DISEASE AND INJURY CAUSATION (2d ed.), at p. 578. Said differently, verification of Plaintiff's diagnoses should occur before a general causation analysis, which itself should occur before a specific causation analysis. *Id.*

[79] R. Doc. 58-1 at p. 17.

[80] *Novelozo v. BP Expl. & Prod., Inc., et al.*, No. 13-1033, 2022 WL 1460103 *8 (E.D. La. May 9, 2022) (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)); *see also Murphy v. BP Expl. & Prod., Inc., et al.*, No. 13-1031, 2022 WL 1460093 *8 (E.D. La. May 9, 2022); *Johns v. BP Expl. & Prod.*, No. 17-3304, 2022 WL 1811088 (E.D. La. June 2, 2022); *Johnson v. BP Expl. & Prod.*, No. 17-3308, 2022 WL 1811090 (E.D. La. June 2, 2022); *Macon v. BP Expl. & Prod.*, No. 17-3548, 2022 WL 1811135 (E.D. La. June 2, 2022); *Murray*, 2022 WL 1811138; *Street v. BP Expl. & Prod.*, No. 17-3619, 2022 WL 1811144 (E.D. La. June 2, 2022).

[81] The March 14, 2022 version of Cook's report, to be specific, is at issue in the case at bar. *See* R. Doc. 35-4 in 17-3582 (the March 14, 2022 version of the Cook report before Judge Ashe); *see also* R. Doc. 58-3 in 17-3110 (the March 14, 2022 version of the Cook report before this Court). The March 14, 2022 report is "Version 2" of Cook's report. Throughout this district's B3 docket, Dr. Cook has produced four versions of a general causation report: Version 1 was issued in fall 2021, Version 2 was issued on March 14, 2022, Version 3 was issued on May 31, 2022, and Version 4 was issued on June 21, 2022. In more than 300 cases, ten judges of this district have reviewed either Version 1, 2, 3, or 4 of Dr. Cook's report and excluded them under *Daubert*. *See, e.g.*, *Murphy v. BP Expl. & Prod.*, No. 13-1031, 2022 WL 1460093 (E.D. La. May 9, 2022) (excluding Version 1); *Murray v. BP Exploration & Production, Inc., et al*, No. 17-3582, 2022 WL

provided in this case and excluded Cook's testimony because Cook "fail[ed] to identify the dose of the toxic chemicals necessary to cause any of the complained-of health effects"—which, again, is a minimum requirement set by the Fifth Circuit.[82]

In this case, Cook's report and proposed testimony also fail to satisfy that minimum requirement. In Cook's report, he acknowledges the "toxicology maxim that the dose determines the poison" because most chemicals can be toxic, thereby leaving the dose as the sole determinant of what is toxic.[83] Fatally, however, Cook's expert report includes no identification of the necessary dose of exposure for any of Plaintiff's complained-of symptoms to manifest. Instead, Cook concludes it "can be very challenging to accurately measure or estimate" the necessary dose.[84] While Courts "do not require a mathematically precise table equating levels of exposure with levels of harm, . . . there must be evidence from which a reasonable person could conclude that a defendant's emission has probably caused a particular plaintiff the kind of harm of which he or she complains before there can be a recovery."[85]

Plaintiff's opposition asserts, with no citation to the Cook report, that Cook relies upon the expert testimony of Dr. Rachel Jones as it relates to the identification of the necessary dose of exposure.[86] However, Cook's report, unlike the expert report in *Novelozo* and like the expert report in *Murray*, includes no reference to, or reference to reliance on, Dr. Jones's expert report. In fact, the only time the name "Jones" appears in

---

1811138 (E.D. La. June 2, 2022) (excluding Version 2); *Miller v. BP Expl. & Prod.*, No. 17-4444, 2022 WL 4353573 (E.D. La. Sept. 15, 2022) (excluding Version 3); *Fairley v. BP Exploration & Production, Inc.*, No. 17-3988, 2022 WL 16731817 (E.D. La. 11/3/2022) (excluding Version 4). In light of those cases, the Court has reviewed all four versions and finds them all excludable under *Daubert* for the reasons stated in this Order and Reasons.

[82] *Murray*, 2022 WL 1811138 at *6.
[83] R. Doc. 50-5 at p. 32.
[84] *Id.* at p. 28.
[85] *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996).
[86] R. Doc. 63 at p. 17.

the expert report is in a citation to a source on cancer policy in the United States by a "D. Jones."[87] As a result, without deciding whether Dr. Rachel Jones' report does in fact quantify the level at which various substances are unsafe to humans, it is clear Cook does not rely on Dr. Jones in the first place.

Additionally, Plaintiff argues Cook could not identify the harmful level of exposure because, allegedly, Defendants prevented contemporaneous studies of oil cleanup workers by failing to conduct biomonitoring and dermal monitoring.[88] "General causation is whether a substance is capable of causing a particular injury or condition in the general population . . . ."[89] If a substance is capable of causing a particular injury or condition in the general population, an expert must then determine at what level of exposure the condition manifests.[90] To determine that dosage, an expert may consult the universe of epidemiology and toxicology literature studying the chemicals at issue.[91] As Judge Rodgers explained, there is a "massive quantity of high-quality environmental data" in the universe of literature associated with the Deepwater Horizon oil spill.[92] Moreover, "a general causation opinion is not dependent upon data from the incident at issue,"[93] meaning Cook's failure to quantify the harmful level of exposure is not cured merely because of a claim that an insufficient amount of biomonitoring and dermal monitoring data exists from the *Deepwater Horizon* oil spill. As such, assuming *arguendo* Plaintiff's allegation that Defendants prevented studies of oil cleanup workers

---

[87] R. Doc. 58-3 at p. 30.
[88] R. Doc. 63 at p. 2. This argument is the subject of Plaintiff's spoliation motion, which the Court addresses separately.
[89] *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, 722 (5th Cir. 2009).
[90] *Murray v. BP Exploration & Production, Inc., et al*, No. 17-3582, 2022 WL 1811138 *6 (E.D. La. June 2, 2022).
[91] *In re Deepwater Horizon BELO cases*, No. 19-963, 2020 WL 6689212 *4 (N.D. Fla. Nov. 4, 2020).
[92] *Id.*
[93] *Fairley v. BP Exploration & Production, Inc.*, No. 17-3988, 2022 WL 16731817, *4 (E.D. La. 11/3/2022) (Ashe, J.).

by not collecting data related to the Deepwater Horizon oil spill is true,[94] Cook could have attempted to support an opinion as to the dose necessary to cause Plaintiff's symptoms by relying on the universe of relevant epidemiology and toxicology literature or by relying on the work of Dr. Jones. He did neither.

In reaching its decision, the Court rejects Plaintiff's efforts to defend Dr. Cook's failure to identify a harmful level of exposure to a specific chemical. Plaintiff asserts that Dr. Cook's analysis relies on peer-reviewed scientific literature that is the best, state of the art science on which to base causation opinions related to BP Oil Spill worker exposures. Plaintiff attempts to bolster this position with an affidavit by Dr. Linda Birnbaum, the former director of the National Institutes of Environmental Health and Safety, in which Dr. Birnbaum argues it is not "plausible" to establish an oil-spill responder's quantitative exposure to a particular chemical at a given level because of issues with data collection. As other sections of this court have noted, Dr. Birnbaum's affidavit "neither cures nor explains the deficiencies in [Dr. Cook's] report."[95] "The question of an individual oil responder's exposure level is relevant to specific causation, not general causation," so "[t]he alleged impossibility of establishing BP Oil Spill responder's quantitative exposure to a given chemical at a given level does not [foreclose] Dr. Cook's ability to consult the relevant scientific and medical literature on the harmful effects of oil to determine whether a relevant chemical has the capacity to cause the harm alleged by plaintiff in the general population."[96] Dr. Birnbaum's representation about the difficulties scientists face quantifying individual responders' exposures are thus "irrelevant to the issue of general causation in this case, which requires examination of the dose of exposure known to cause

---

[94] Defendants contend this is unfounded.
[95] *Griffin v. BP Expl. & Prod. Inc.*, 2023 WL 183894, at *5 (E.D. La. 1/13/2023).
[96] *Jenkins v. BP Expl. & Prod. Inc.*, 2023 WL 172044, at *2 (E.D. La. 1/12/2023) (internal quotation marks omitted).

harm in the general population."[97]

In sum, Cook did not identify the dose of exposure necessary for each of Plaintiff's symptoms to manifest. Cook's failure to satisfy this minimum requirement "weighs heavily in favor of exclusion"[98] of his testimony on general causation.

Accordingly, Defendants' motion *in limine* to exclude Cook's general causation testimony must be granted because the testimony is unreliable and, therefore, inadmissible.

## II.   Plaintiff's spoliation motion is denied.

Plaintiff argues Defendants' "decision not to do biomonitoring and dermal monitoring of clean-up workers" either during or after the oil spill was spoliation of evidence.[99] As a consequence of Defendants' alleged spoliation of evidence, B3 "Plaintiffs [now] simply request that Dr. Cook's opinions . . . be deemed reliable and admissible under *Daubert*."[100] Spoliation is the intentional destruction of evidence or failure to preserve evidence in one's possession.[101] A party seeking an adverse inference on account of spoliation generally must show

> (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind [(i.e., with bad faith)]; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[102]

---

[97] *Id.* Further, Dr. Birnbaum was not timely disclosed as an expert. Thus, her affidavit is procedurally improper. "This constitutes a separate and additional reason the affidavit should not make any difference." *See id.* at *1 n.6.

[98] *Novelozo v. BP Expl. & Prod., Inc., et al.*, No. 13-1033, 2022 WL 1460103 *9 (E.D. La. May 9, 2022).

[99] R. Doc. 91-1 at p. 2.

[100] *Id.*

[101] *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, at *1 (E.D. La. June 12, 2000) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994)).

[102] *Coastal Bridge Co., LLC v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020) (citing *Port of S. La. v. Tri-Parish Indus.*, 927 F. Supp. 2d 332, 346 (E.D. La. 2013); *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 190 (5th Cir. 2018)).

First, Plaintiff has failed to carry his burden of proving Defendants had a duty to preserve evidence. In *Fairley v. BP Exploration & Production, Inc., et al.*, Judge Barry Ashe was faced with the same spoliation motion by a cleanup worker, which he denied because, inter alia, the cleanup worker failed to sustain his burden of demonstrating BP had a duty.[103] The cleanup worker in that case argued "the evidence of exposure was 'created' and 'existed' when the future B3 plaintiffs were exposed to weathered oil and BP failed to 'preserve' it by conducting a monitoring program."[104] Such an argument, the *Fairley* court reasoned, was "absurd[]."[105] In substance, the cleanup worker's spoliation claim in *Fairley* boiled down to an argument that "BP failed to develop evidence that might at some future day have aided potential plaintiffs in making claims against BP."[106] The *Fairley* court found the evidence the plaintiff argued was "spoliated"—biomonitoring and dermal monitoring data—never existed in the first place.

The cleanup worker in the case before this Court, Bruton, makes the exact same argument for why Defendants had an obligation to preserve evidence.[107] This argument, however, fails as a matter of law. "Courts have held . . . 'the duty to preserve evidence does not include the duty to create evidence . . . [because] the duty to preserve evidence implies a duty not to alter or destroy existing evidence."[108] In so holding, courts also have drawn a distinction between failing to preserve evidence, which constitutes spoliation, and failing to collect evidence, which does not.[109] The duty theory advanced by both Plaintiff

---

[103] *Fairley v. BP Exploration & Production, Inc., et al.*, No. 17-3988, 2022 WL 16731817, *2-4 (E.D. La. 11/3/2022) (Ashe, J.); *see also Bland v. BP Exploration & Production, Inc., et al.*, No. 17-3049, 2022 WL 17155686, *11-12 (E.D. La. 11/22/2022) (Vance, J.) (adopting Judge Ashe's spoliation analysis).

[104] *Fairley*, No. 17-3988, 2022 WL 16731817, at *3 (internal quotations omitted).

[105] *Id.*

[106] *Id.*

[107] R. Doc. 91.

[108] *Fairley*, No. 17-3988, 2022 WL 16731817, at *3 (quoting *De Los Santos v. Kroger Tex., LP*, 2015 WL 3504878, at *6 n.4 (N.D. Tex. June 3, 2015) (quoting *Bertrand v. Fischer*, 2011 WL 6254091, at *4 (W.D. La. Dec. 14, 2011))).

[109] *Id.* (quoting *United States v. Greco*, 734 F.3d 441, 447 (6th Cir. 2013)).

in this case and the plaintiff in *Fairley*, if adopted, "would cause parties and courts to go down the bottomless hole of capturing the next untaken photograph, interviewing the next uninterviewed witness, or testing the next untested person, place[,] or thing, with no idea of where the proposed duty ends."[110]

Buttressing this Court's finding of no duty is Plaintiff's failure to point to any statute, regulation, case law, or government direction for his contention that Defendants had a duty to conduct a monitoring program to create evidence in order to preserve it.[111] Instead, like the plaintiff in *Fairley*, Plaintiff here makes "some noises about BP's knowledge that such monitoring was useful and that it received recommendations for certain monitoring programs."[112] However, "[s]uggestions and proposals do not equate to an affirmative duty, especially where, as here, the federal government, not BP, was in charge of the spill response, and the federal government decided against conducting or requiring monitoring."[113] Accordingly, Plaintiff has not carried his burden of establishing the first essential element of his spoliation argument: a duty.

Second, Plaintiff has failed to present evidence establishing Defendants acted in bad faith. Other sections of the Eastern District of Louisiana have already found no evidence of bad faith in identical B3 cases with the same record before them.[114] The Court agrees with these analyses. Plaintiff's bad faith argument rests in large part on the fact that the National Institute of Occupational Safety and Health ("NIOSH") proposed a

---

[110] *Id.* (internal quote omitted)
[111] *See generally* R. Doc. 91-1 (failing to point to a source of law that imposes a duty on Defendants to implement a monitoring program).
[112] *Fairley*, No. 17-3988, 2022 WL 16731817, at *4.
[113] *Id.*
[114] *See, e.g., id.*; *Bland v. BP Exploration & Production, Inc., et al.*, No. 17-3049, 2022 WL 17155686, *11-12 (E.D. La. 11/22/2022) (Vance, J.); *Backstrom v. BP Expl. & Prod. Inc.*, No. 17-3029, 2022 WL 2342390, at *4 (E.D. La. 6/29/2022) (Barbier, J.).

monitoring program that never came to fruition.[115] But as courts in this district have noted, the uncontroverted evidence establishes NIOSH itself decided against implementation of the proposed monitoring program.[116] In that light, even considering the "scant circumstantial evidence from which [Plaintiff] draws [other] speculative conclusions,"[117] Plaintiff has failed to present sufficient evidence to demonstrate "BP acted with a culpable state of mind to suppress the truth and deprive future parties of this data"—a required element for an adverse inference like the one Plaintiff seeks in this case.[118]

Third, even overlooking Plaintiff's failure to sustain his burden of proof, Plaintiff's "simpl[e] request that Dr. Cook's opinions . . . be deemed reliable and admissible under *Daubert*" as a consequence of Defendants' spoliation is wholly unwarranted.[119] Plaintiff's argument that Cook is unable to identify the harmful level of exposure required for complained-of symptoms to manifest because Defendants failed to conduct biomonitoring and dermal monitoring—and that this means Plaintiff is entitled to escape *Daubert* scrutiny—ignores reality. A general causation opinion is not dependent upon data from the incident at issue. This means Cook's failure to quantify the harmful level of exposure is not cured merely because of a claim that an insufficient amount of biomonitoring and dermal monitoring data exists from the *Deepwater Horizon* oil spill. Moreover, Cook's report is unreliable under *Daubert* for reasons unrelated to the biomonitoring and dermal monitoring issue: Cook failed to verify Bruton's diagnoses.

---

[115] *See, e.g.*, R. Doc. 91-1 at p. 2.
[116] *Backstrom*, No. 17-3029, 2022 WL 2342390, at *4.
[117] *Bland*, No. 17-3049, 2022 WL 17155686, *11; *see* R. Doc. 91-1 at pp. 22-25.
[118] *Backstrom*, No. 17-3029, 2022 WL 2342390, at *5.
[119] R. Doc. 91-1 at p. 2.

Accordingly, Plaintiff's spoliation should be denied.

**III.    Plaintiff has failed to present a genuine issue of material fact with respect to his claims that his injuries were caused by exposure to oil and dispersants because Plaintiff lacks general causation expert testimony.**

Because Cook's general causation opinions are excluded and Plaintiff's spoliation motion is denied, Defendants are entitled to summary judgment on Plaintiff's claims.[120] Plaintiff has no other medical expert to establish general causation, which is required in a toxic tort case.[121] Plaintiff has failed to present a genuine issue of material fact with respect to his claims that his injuries were caused by exposure to oil and dispersants. Accordingly, Defendants' motion for summary judgment should be granted.

<u>**CONCLUSION**</u>

**IT IS ORDERED** that the motion *in limine*[122] is **GRANTED**.

**IT IS FURTHER ORDERED** that the spoliation motion[123] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment[124] is **GRANTED**. Judgment is granted in favor of Defendants BP Exploration & Production, BP America Production Company, BP p.l.c., Halliburton Energy Services, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc., and against Plaintiff Joseph Bruton on all claims.

**New Orleans, Louisiana, this 25th day of May, 2023.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[120] *Novelozo v. BP Expl. & Prod., Inc., et al.*, No. 13-1033, 2022 WL 1460103, at *8 (E.D. La. May 9, 2022); *Murphy*, 2022 WL 1460093 *8; *Johns*, 2022 WL 1811088; *Johnson*, 2022 WL 1811090; *Macon*, 2022 WL 1811135; *Murray*, 2022 WL 1811138; *Street*, 2022 WL 1811144.

[121] *Seaman*, 326 F. App'x at 722; *see also Stephens v. BP Expl. & Prod.*, No. 17-4294, 2022, WL 1642136 * 2-3 (E.D. La. June 24, 2022).

[122] R. Doc. 58.

[123] R. Doc. 91.

[124] R. Doc. 59.